UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------

UNITED STATES, : CASE NO. 1:15-cr-00045
:
      Plaintiff, :
:
v. : OPINION & ORDER
: [Resolving Doc. 24]
SEAN HOUSTON, :
:
      Defendant. :
:
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On February 3, 2015, Defendant Sean Houston was indicted on one count of conspiracy to defraud the government in violation of 18 U.S.C. § 286, and thirty-two counts of filing false, fictitious, or fraudulent tax returns in violation of 18 U.S.C. §§ 287 and 2.[1] Defendant Houston now moves to dismiss the indictment on the grounds that "the government's unwarranted and prejudicial delay in filing charges against [Defendant] Houston has violated his right to due process under the Fifth Amendment of the United States Constitution."[2]

The Court held an evidentiary hearing on this motion on April 3, 2015.[3] At the conclusion of that hearing the Court **DENIED** the motion and summarized its reasoning.[4] This opinion further explains the Court's decision.

**I. Background**

---

[1] Doc. 1.

[2] Doc. 24 at 1. The United States opposes. Doc. 30.

[3] Throughout this opinion, citations to the draft transcript of the April 3, 2015, hearing will be cited as "Hr'g Tr. at [page]:[line]."

[4] Hr'g Tr. at 67:10–67:22.

-1-

Case No. 1:15-cr-00045
Gwin, J.

Defendant Houston operated a tax preparation business in Cleveland, Ohio. In 2010, the Internal Revenue Service ("IRS") began investigating Houston for potentially filing false tax returns from tax year 2009. Houston had filed thirty-two returns on behalf of individuals living in South Carolina. Defendant Houston says these clients were referred to him by Renay Baker, an accountant living in Atlanta, Georgia, and that if there was any fraud it was because Baker duped him by giving him fictitious documents.[5]

On March 31, 2011, federal officers executed a search warrant on Defendant Houston's office.[6] During this search, the officers seized a great number of documents, including tax returns and supporting documentation. Houston says the fictitious documents sent to him by Renay Baker were among the items seized. The government responds that it neither found nor seized such documents. During the search, IRS Special Agent Dennis Nutt also printed a fax activity log from Defendant Houston's fax machine that showed Houston's fax activity from February 19, 2010, through May 9, 2010.[7]

Defendant Houston was not indicted until February 3, 2015, almost four years after the search and just one day before the five-year statute of limitations would have run. Although the government had been investigating Houston during those four years and had numerous interactions with him and his counsel, Houston says he was blind-sided by the 2015 indictment. He says the government intentionally delayed bringing these charges against him, and in doing so violated his due process rights because the evidence he needs to adequately defend himself has been lost due to the delay.

---

[5] *See* Doc. 24 at 4–5.

[6] Defendant's residence was also searched, but nothing that happened during that search is relevant to this motion. Defendant was also interviewed by IRS special agent Joseph Ziegler before the search.

[7] *See* Doc. 24-2.

Case No. 1:15-cr-00045
Gwin, J.

Defendant Houston raises two specific issues regarding lost or missing evidence. First, Houston says that the government has "failed to retain" the fictitious seized documents sent by Renay Baker, and that no other copies of these documents exist. Second, Houston says the government should have printed a fax activity log going back to January 1, 2010, and he cannot now obtain that activity log because he discarded the fax machine sometime between 2011 and 2015.

## II. Law and Analysis

"[T]he Due Process Clause of the Fifth Amendment [requires] dismissal of the indictment if . . . pre-indictment delay . . . caused substantial prejudice to the [defendant's] rights to a fair trial and . . . the delay was an intentional device to gain tactical advantage over the accused."[8] A due process violation may occur even though the statute of limitations has not yet run as long as the two prongs of the test—actual prejudice and tactical intent—have been satisfied.[9]

**A. Tactical Intent**

Taking these prongs in reverse order, there is no evidence that the government intentionally delayed indicting Defendant in order to gain a tactical advantage. A prosecutor is not obligated to seek an indictment the moment he has obtained evidence sufficient to establish guilt.[10] "Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able to promptly establish guilt beyond a reasonable doubt."[11] "[W]here delay is due to simple negligence and not a concerted effort by the government to gain an advantage, no due process

---

[8] *United States v. Marion*, 404 U.S. 307, 324 (1971).
[9] *United States v. Vaughn*, 444 F. App'x 875, 878 (6th Cir. 2011).
[10] *United States v. Lovasco*, 431 U.S. 783, 790–96 (1977).
[11] *Id.* at 795.

Case No. 1:15-cr-00045
Gwin, J.

violation exists."[12] Even recklessness by the prosecution will not suffice—the delay must have been an intentional, tactical maneuver.[13]

Defendant Houston has made only conclusory assertions, totally devoid of supporting evidence, that the government's delay in seeking an indictment was for the purpose of gaining a tactical advantage. Instead, the evidence shows that the government was simply continuing its investigation throughout the four years between the search and the indictment: IRS agents and prosecutors were reviewing documents, interviewing witnesses and presenting them to the grand jury, and following the internal procedures needed to file charges.[14] At most, it appears the prosecution of the case may have been delayed by a few months due to personnel turnover in the U.S. Attorney's Office.[15] Defendant Houston has not even shown negligence by the government, let alone intentional conduct that would violate his due process rights. The motion to dismiss therefore loses.

## B. Actual Prejudice

Furthermore, showing actual prejudice under the first prong of the test is a "nearly insurmountable" standard for a defendant to meet "because proof of actual prejudice is always speculative."[16] This prong requires showing that the defendant's right to a fair trial has been

---

[12] *United States v. Banks*, 27 F. App'x 354, 357 (6th Cir. 2001) (citing *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992)).

[13] *See United States v. Rogers*, 118 F.3d 466, 476 (6th Cir. 1997).

[14] *See* Doc. 30 at 2–3; *see also United States v. Baltimore*, 482 F. App'x 977, 982 (6th Cir. 2012) (delay caused by continued investigation, including locating witnesses and having them testify before a grand jury, did not violate due process). The Court "may accept the government's representations about the reason for delay" even without sworn testimony supporting it. *United States v. Thomas*, 404 F. App'x 958, 961 (6th Cir. 2010).

[15] *See* Doc. 30 at 2–3.

[16] *Rogers*, 118 F.3d at 477 n.10.


Case No. 1:15-cr-00045
Gwin, J.

substantially prejudiced,[17] meaning "that the evidence lost would be both material and favorable to the defense."[18] Defendant Houston has not met this high burden here, and therefore loses on this prong as well.

Defendant Houston blames the government for losing documents Renay Baker sent to him, including identifications for the thirty-two individuals and their signed consent for him to prepare their taxes. At the hearing on this motion, both Houston and another witness, Donqualla Hale-Peterson, testified that these documents existed.[19] Defendant Houston says that the government seized these documents during the March 2011 search, and that Houston has no other copies.[20] The government responds that it did not find these documents during its search and, accordingly, did not seize them.[21] The government has also disclosed Renay Baker's grand jury testimony where she denied Houston's allegations.[22]

Whether these documents actually existed, and if so what that means for Houston's guilt or innocence, are issues of fact and credibility that are appropriately resolved by a jury. At trial, Houston would be able to offer testimony about what documents he received from Renay Baker and what he did with them, just as he did at the motion hearing.[23] He would also be able to introduce

---

[17]/*Banks*, 27 F. App'x at 357 (citing *Brown*, 959 F.2d at 66).

[18]/*Vaughn*, 444 F. App'x at 879 (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982)).

[19]/Hr'g Tr. at 8:10–9:22, 23:13–25:7.

[20]/Defendant Houston says he had faxed copies of these documents to Santa Barbara Bank while trying to get anticipatory refund checks, but that the Bank has not retained these copies and he has therefore been unable to recover them. At the hearing, Houston offered records from the Bank indicating that they had received faxes from Houston related to these tax returns, but the records did not reveal the substance of the faxes. *See* Hr'g Tr. at 38:19–40:3.

[21]/Hr'g Tr. at 53:14–54:9.

[22]/*See* Doc. 30-5.

[23]/*Cf, e.g.*, *Rogers*, 118 F.3d at 475 ("The death of a potential witness during the pre-indictment period may demonstrate the requisite prejudice if the defendant can demonstrate that exculpatory evidence was lost and could not be obtained through other means. However, a defendant does not show actual prejudice based on the death of a potential witness if he has not given an indication of what the witness's testimony would have been and whether the substance of

(continued...)

Case No. 1:15-cr-00045
Gwin, J.

evidence that would explain to the jury why he does not have them. Thus, even if the documents did exist, and were lost by the government, and would help Defendant Houston's case[24]—all points of contention—the prejudice to Houston would not be substantial, as he can still adequately present his theory of the case.

Defendant Houston also blames the government for not printing a more complete fax activity log covering a wider date range. But once again, Houston will be able to present other evidence of his communications with Renay Baker, so any prejudice is slight. Furthermore, that Houston does not have a more complete fax activity log is a result of his own failure to preserve evidence rather than the government's failure to create it. By March 2011, Houston was aware that he was the subject of a government investigation. The inventory from the government's search, which was shown to Defendant Houston that day, specifies that the government seized a "Print out of Fax Activity" that was found "On Fax Machine."[25] Despite this, Houston made no attempt to preserve potentially exculpatory evidence, either by generating a fax activity log for himself or by simply preserving the fax machine.[26] Thus, the loss of this fax log is not a result of any delay in the prosecution of this case,[27] and is attributable to Houston rather than the government.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Houston's motion to dismiss the

---

[23]/(...continued) the testimony was otherwise available." (citations omitted)).

[24]/*See* United States v. Szilvagyi, 417 F. App'x 472, 479 (6th Cir. 2011) (finding no prejudice when there was no proof that documents had been destroyed, and that even if they had they would not necessarily have been exculpatory).

[25]/Doc. 24-1.

[26]/Hr'g Tr. 25:15–26:16, 32:14–33:23.

[27]/*See* United States v. Wright, 343 F.3d 849, 860 (6th Cir. 2003) (finding no prejudice when defendant "presented no evidence that various records became unavailable to him *because of* the delay" (emphasis added)); United States v. Montgomery, 491 F. App'x 683, 691 (6th Cir. 2012) (finding no prejudice when defendant could not explain "how the delay in issuing the superseding indictment corresponded to [two witnesses'] inability to testify").

Case No. 1:15-cr-00045
Gwin, J.

indictment.

       IT IS SO ORDERED.


Dated: April 22, 2015                      s/       *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE